IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

**SALMON LICENSING, LLC,**

    Plaintiff,

v.

**SUGARLAND HOLDINGS GROUP LLC,**

    Defendant.

C.A. No._____

**TRIAL BY JURY DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Salmon Licensing, LLC ("Salmon Licensing"), by and through its undersigned counsel, for its Complaint against Sugarland Holdings Group LLC ("Sugarland" and/or "Defendant"), alleges as follows:

### NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. § 271.

### THE PARTIES

2. Salmon Licensing is a Delaware limited liability company whose place of business is located at 320 Wilmette Avenue, Glenview, IL 60025.

3. On information and belief, Defendant is a Nevada limited liability company with a principal place of business at 31504 Foxfield Dr., Westlake Village, CA 91361. Upon information and belief, Defendant may be served with process at 3325 W Pebble Rd., Las Vegas, NV 89139.

4. Defendant is in the business of making, using, selling, offering for sale and/or importing repeater systems, such as, for example, consumer signal boosters.

5. On April 6, 2011, the Federal Communications Commission ("FCC") issued a

Notice of Proposed Rule Making ("NPRM") with the following title and citation: Amendment of Parts 1, 2, 22, 24, 27, 90 and 95 of the Commission's Rules to Improve Wireless Coverage Through the Use of Signal Boosters, *Notice of Proposed Rulemaking*, 26 FCC Rcd 5490, 5527, ¶ 106 (2011).

6. After receiving comments and proposals, such as the Joint Proposal and Consolidated Proposal, from numerous and various stakeholders, the Federal Communications Commission ("FCC") issued a Report and Order that implemented new requirements for consumer signal boosters on February 20, 2013.

7. In the February 20, 2013 Report and Order, the FCC found "that the public interest would be served by requiring all Consumer Signal Boosters to comply with a Network Protection Standard." Report and Order at p. 23. As stated in the Report and Order, "Under the Network Protection Standard, all Consumer Signal Booster must: (1) comply with existing technical parameters for the applicable spectrum band of operation; (2) automatically self-monitor certain operations and shut down if not in compliance with our new technical rules; (3) automatically detect and mitigate oscillations in the uplink and downlink bands; (4) power down or shut down automatically when a device is not needed, such as when the device approaches the base station with which it is communicating; (5) be designed so that these features cannot be easily defeated; and (6) incorporate interference avoidance for wireless subsystems." *Id.*

8. The final rules adopted in the Report and Order were published in the Federal Register on April 11, 2013, *see* 78 FR 21559, and became effective on May 13, 2013, except for amendments to §§ 1.1307(b)(1), 20.3, 20.21(a)(2), 20.21(a)(5), 20.21(e)(2), 20.21(e)(8)(i)(G), 20.21(e)(9)(i)(H), 20.21(f), 20.21(h), 22.9, 24.9, 27.9, 90.203(q),

90.219(b)(1)(i), 90.219(d)(5), and 37 47 C.F.R. § 90.219(e)(5), which contain information collection requirements that are not effective until approved by the Office of Management and Budget (``OMB'').

9. The rules in the Report and Order required that by March 1, 2014, the sale and marketing deadline in Section 20.21(g), all Consumer Signal Boosters marketed, distributed or sold in the United States must comply with Section 20.21 of the Commission's rules.

10. Following the release of the Report and Order, the Telecommunications Certification Body Council began developing laboratory test procedures in order to test signal boosters for compliance with the newly adopted Section 20.21 requirements.

11. On February 11, 2014, the FCC's Wireless Telecommunications Bureau waived the March 1, 2014, sale and marketing deadline in Section 20.21(g) and extended it for 60 days, until April 30, 2014, the deadline by which all Consumer Signal Boosters marketed, distributed or sold in the United States must comply with Section 20.21 of the Commission's rules.

12. The FCC's Wireless Telecommunications Bureau has granted no other extensions for by which all Consumer Signal Boosters marketed, distributed or sold in the United States must comply with Section 20.21 of the Commission's rules.

13. Accordingly, at the time of the filing of this complaint, all Consumer Signal Boosters, including Defendant's, marketed, distributed or sold in the United States must comply with Section 20.21.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35

U.S.C. §§ 1 *et seq.*

15. This Court has personal jurisdiction over Defendant by virtue of its systematic and continuous contacts with this jurisdiction, as well as because of the injury to Salmon Licensing and the cause of action Salmon Licensing has raised, as alleged herein.

16. Jeffrey W. Salmon ("Mr. Salmon") is the sole member and manager of Salmon Licensing, as well as the sole member and manager of the former owner of the Asserted Patent, Wildcat Licensing LLC. Both Salmon Licensing and Wildcat Licensing LLC are run out of Mr. Salmon's office in Glenview, IL. Wildcat Licensing LLC is an Illinois LLC. Mr. Salmon conducted all of the negotiations regarding the patent in suit with its former owner KT Corporation from his office in Glenview.

17. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Illinois Long-Arm Statute, due to at least its substantial business in this forum, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Illinois.

18. Defendant has conducted and does conduct business within the state of Illinois, directly or through intermediaries, resellers, agents, or offers for sale, sells, and/or advertises products in Illinois that infringe the Asserted Patent (as defined below).

19. In addition to Defendant continuously and systematically conducting business in Illinois, the causes of action against Defendant are connected (but not limited) to Defendant's purposeful acts committed in the state of Illinois, including Defendant's making, using, importing, offering for sale, or selling products which include features that

fall within the scope of at least one claim of the Asserted Patent.

20. Venue lies in this District under 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, Defendant is subject to personal jurisdiction in this District, and has committed and continues to commit acts of patent infringement in this District. For example, Defendant has used, sold, offered for sale, and/or imported infringing products in this District.

## THE PATENT-IN-SUIT

21. There is one patent at issue in this action: United States Patent No. 6,748,194 (the "'194 Patent" or the "Asserted Patent"). A copy of the '194 Patent is attached hereto as Exhibit A.

22. On June 8, 2004, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '194 Patent, entitled "Repeater system having oscillation preventing function and automatic reverse output disabling function for non-subscriber and control method thereof" after a full and fair examination.

23. The '194 Patent contains two independent claims and four dependent claims.

24. Salmon Licensing presently is the owner of the '194 Patent and possesses all right, title and interest in and to the '194 Patent.

25. Salmon Licensing owns all rights of recovery under the '194 Patent, including the exclusive right to recover for past infringement.

26. Pursuant to 35 U.S.C. § 282, the '194 Patent is presumed valid and enforceable. Defendant commercializes, *inter alia*, devices which include all of the elements recited in one or more claims of the '194 Patent.

## DESCRIPTION OF THE ACCUSED INSTRUMENTALITIES

27. Defendant's Infringing Products include but are not limited to: "H Max Amp Mobile RV Kit."

28. Defendant's infringing products, when used, receive data from an external base station transceiver system, amplify the data, and transmit the data to a mobile device after converting the amplified data to a service frequency, as well as, transmit data received from a mobile device to the base station transceiver system, but only when the output signal of the receiver is not above a first reference value during a first time or not below a second reference value during a second time (hereinafter, "Infringing Products").

29. For example, the Max Amp Mobile RV Kit is a repeater system comprised of an exterior antenna, an interior antenna and a signal booster in which a signal from a cellular base station is received by the exterior antenna. The signal is then sent to the signal booster for amplification, which then sends the signal to the interior antenna to send out as a service frequency to a mobile device. The Max Amp Mobile RV Kit also receives and amplifies the signal received from the mobile device and sends that signal to the base station. To prevent interference with the base station, the Max Amp Mobile RV Kit will prevent sending a signal on the reverse path if certain power level conditions are met, as required by the FCC Rules.

30. As per the FCC rules, the Max Amp RV Amplifier must: have capability to provide equivalent uplink and downlink gain; self-monitor its operation and shut down automatically if operation exceeds noise and gain limits, as well as mitigate any unintended oscillations; and automatically self-monitor its operation and shut down automatically if operation exceeds noise and gain limits, as well as mitigate any unintended oscillations.

31. The components described in paragraphs 28-30 are covered by at least one claim of the '194 Patent. Thus, Defendant's use, manufacture, sale and/or offer for sale of the Accused Product is enabled by the device described in the '194 Patent.

## COUNT I:
## INFRINGEMENT OF THE '194 PATENT

32. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-31.

33. Defendant directly infringes at least claim 1 of the '194 Patent by making, using, selling, offering for sale and/or importing the Infringing Products.

34. Defendant has indirectly infringed and continues to indirectly infringe the '194 Patent by actively inducing its customers, users, and/or licensees to directly infringe by using the Infringing Products.

35. Defendant has had knowledge of infringement of the '194 Patent at least as of the service of the present complaint.

36. Accordingly, at least as of service of the present complaint, Defendant has engaged or will have engaged in inducing its customers to directly infringe the '194 Patent at least by using the Infringing Products with knowledge that its customers' acts constitute direct infringement. For example, at least as of service of the present complaint, Defendant knows that its customers' use of the Infringing Products is facilitated by the system described in the '194 Patent.

37. Furthermore, Defendant sells, offers to sell and advertises the Infringing Products, in this District and elsewhere in the United States, specifically intending that its customers use the Infringing Products.

38. As a direct and proximate result of Defendant's indirect infringement by

inducement of the '194 Patent, Plaintiff has been and continues to be damaged.

39. Defendant has contributorily infringed and continues to contributorily infringe the '194 Patent by selling and/or offering to sell the Infringing Products, whose infringing features are not a staple article of commerce and when used by a third-party, such as a customer, can only be used in a way that infringes the '194 Patent.

40. At least as of service of the complaint, Defendant has sold or offered to sell or will have sold or offered to sell the Infringing Products with knowledge of the '194 Patent and knowledge that the Infringing Products constitute a material part of the invention claimed in the '194 Patent, such that their use by third-parties, such as a customer, constitute infringement of the '194 Patent.

41. As a direct and proximate result of Defendant's contributory infringement of the '194 Patent, Plaintiff has been and continues to be damaged. Defendant has committed these acts of infringement without license or authorization.

42. By engaging in the conduct described herein, Defendant has injured Salmon Licensing and is thus liable for infringement of the '194 Patent, pursuant to 35 U.S.C. § 271.

43. As a result of Defendant's infringement of the '194 Patent, Salmon Licensing has suffered harm and monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

44. Salmon Licensing will continue to suffer harm and damages in the future unless Defendant's infringing activities are enjoined by this Court. As such, Salmon Licensing is entitled to compensation for any continuing or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

**DEMAND FOR JURY TRIAL**

45. Salmon Licensing demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

Salmon Licensing respectfully prays for the following relief:

1. That Defendant be adjudged to have infringed the Asserted Patent;

2. That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from directly and/or indirectly infringing the Asserted Patent;

3. An award of damages pursuant to 35 U.S.C. § 284 sufficient to compensate Salmon Licensing for Defendant's past infringement and any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

4. An assessment of pre-judgment and post-judgment interests and costs against Defendant, together with an award of such interests and costs, in accordance with 35 U.S.C. § 284;

5. That Defendant be directed to pay enhanced damages, including Salmon Licensing 's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285; and

6. That Salmon Licensing be given such other and further relief as this Court may deem just and proper.

Dated: January 25, 2016

By: /s/ Frank Andreou
Andreou & Casson, Ltd.
661 West Lake Street
Suite 2 North
Chicago, Illinois 60661-1034
Tel (312) 935-2000
Fax (312) 935-2001

*Of Counsel:*

Eugenio J. Torres-Oyola
Ferraiuoli LLC
221 Plaza, 5th Floor
221 Ponce de León Avenue
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: etorres@ferraiuoli.com

**ATTORNEY FOR PLAINTIFF
SALMON LICENSING, LLC**